COWAN, McCLUNG & CO. *v.* SAMUEL GILL *et al.*

1. REGISTRATION. *Deed of trust.* A deed of trust relates from its registration to its execution, and is valid against all existing and subsequent creditors who have acquired no lien prior to its registration.

2. SAME. *Same. Fraud.* Mere silence of trustee and beneficiaries of the execution of the trust deed and failure to register, will not vitiate the deed for fraud.

3. SAME. *Same. General assignment.* A trust deed executed fourteen months before a general assignment, but not registered until within three months of said assignment, is not void under the act of 1881, ch. 121. The deed is *made* when executed, not when registered.

4. PARTNERSHIP. *Surviving partner. Individual creditors.* A partnership is dissolved by the death of a partner, and if the surviving partner purchase goods afterwards and add to the partnership assets, such purchases are the individual assets of the surviving partner, and are first liable to the satisfaction of the individual creditors of the surviving partner.

5. SAME. *Same. Commingling assets.* If the surviving partner commingle his individual property with the firm assets, his individual creditors do not thereby lose their lien on the property, but an account will be 'ordered to ascertain the amount of individual and partnership assets.

6. SAME. *Joint and separate creditors.* If a partner is indebted to the firm, or has taken more than his just share of the joint funds, the joint creditors will not be admitted to prove against the separate estate of that partner until his separate creditors are satisfied, unless it be shown he acted fraudulently with a view to benefit his separate creditors.

7. TRUST DEED. *Beneficiary may attack. When.* If a beneficiary under a general assignment which recognizes a prior trust deed, file a bill to set aside the prior trust as fraudulent and is unsuccessful, he does not thereby forfeit his right to share in the general assignment.

---

FROM GRAINGER.

---

Appeal from the Chancery Court at Rutledge. H. C. SMITH, Ch.

LUCKY & YOE for complainants.

BENJ. J. LEA, G. W. PICKLE, J. P. EVANS and SHIELDS & SHIELDS for defendants.

TURNEY, J., delivered the opinion of the court.

On December 23, 1880, Samuel Gill, for the purpose of securing James T. Shields, John B. Hoyle and

others, in large amounts in which he was in part indebted, and for other parts some of the beneficiaries were his security, made a deed in trust to a tract of land belonging to himself, to W. S. Shields as trustee, the deed to run twelve months to maturity.

At the making of the deed Samuel Gill was, and had been for some years, a member of the mercantile firm of W. T. Gill & Co. The deed was registered on the 18th of February, 1882. On the same day (February 18), a general assignment was made by Gill under the provisions of the act of the General Assembly of April, 1881, and which was registered on the same day, but subsequently to the deed to Shields.

The first deed was delivered to the trustee, a son of James T. Shields, and by him placed in the safe of Shields & Son, and was unknown, so far as the record shows, to the world except the maker, trustee, beneficiaries and witnesses, until about the time of its registration.

The original bill is filed to avoid the first deed for fraud in fact and law, and because never having been registered until within three months of and in contemplation of general assignment, it and general assignment must be construed as one instrument and as giving preferences, and to that extent void under the act of 1881, forbidding preferences.

After the pleadings were made up and proof being taken, complainants conceived the idea that Samuel Gill owed the firm of W. T. Gill & Co. over $20,000 at the date of the deed in trust, and on the day of the general assignment about $17,000, funds drawn

out of the concern with the consent of his partner, and charged on the books of the firm by the partner; and that while making, and in contemplation of general assignment, and after the death of W. T. Gill, Samuel Gill paid James T. Shields and James S. Gill other sums.

Thereupon an agreement, in lieu of a formal amended bill was entered into, by which complainants allege the facts and claim that in the event the court shall marshal assets as between individual and firm creditors, that they have the right to compel the collection of this sum for the benefit of partnership creditors out of individual assets, and also that the payments to Shields and Gill were void, as giving preferences. Answers are filed denying the indebtedness of Gill and the legal conclusions of complainants.

The Commission of Referees report that the trust deed of December, 1880, was entirely free from fraud in fact, in its inception, and was executed in good faith to secure just debts. This is admitted by complainants in argument.

It is further reported: " The existence of this deed was not made known to a single individual so far as the proof shows, beyond those before mentioned connected with its execution. Samuel Gill says that his son and partner, W. T. Gill, did not know it. This concealment enabled Samuel Gill to continue business with unimpaired credit. A knowledge of its existence would have entirely destroyed his credit. This is conclusively shown by the proof. He continued, however, the ostensible owner of a large and very valua-

ble farm as well as some other property, all in his possession and apparently unencumbered, and was conducting in connection with his son, for a while and after that son's death by himself, a seemingly prosperous business, maintaining to its fullest extent the high character for business integrity and solvency which he had sustained for many years. His son, James S., one of the beneficiaries in said deed, endorsed for him to others, as did also another of said beneficiaries, and for about fourteen months, this man who was hopelessly involved when said deed was executed, was enabled, because of this concealment and non-registration, to increase his liabilities to a considerable extent over and above all his payments, also to engage in business ventures, as a retail merchant in disposing of the goods purchased of complainants and others, on credit, by which he lost, according to his own statement, $12,000. If the deed had been made public or had been promptly registered, these things could not have happened. It is said for the defendants, that the *non-registration* of this deed was because of their sympathy for the old man, and to save his feelings, and we do not doubt the truth of this statement, yet we must, under what we understand to be law, conclusively hold them as intending that to which their acts naturally led. They acted deliberately and with a purpose. They knew, or should have known, being near relatives and most of them neighbors, more or less familiar with his business, that he was buying goods on credit. The non-registration was not the result of oversight or accident. By their

course this wrong was inflicted upon innocent parties who were guilty of no negligence. They had the right to expect the records of the county to show where the title rested of this valuable tract of land, upon the faith of which this man was purchasing their goods on credit, while the mere fact of non-registration might not of itself render the deed void, yet taking all these circumstances into consideration, and we are constrained to hold that as against creditors, said deed is inoperative and void."

We have made this copious literal extract from the report that the first and main question in the case may be distinctly presented.

Do the facts reported constitute such fraud as will avoid the deed? Do they make a case of fraud at all? Before proceeding to the consideration of the question, we deem it due to Samuel Gill to say that we do not understand the facts as showing that after he made the deed in trust "he increased his liabilities to a considerable extent over and above all his payments." On the contrary, we think the proof shows a material reduction, and that he was earnestly and faithfully laboring to pay all, and for a considerable time thought he would be able to do so. He at first positively refused to make the deed, and answered those of the beneficiaries who were urging him to it, that he had ample means to and would pay their debts within the twelve months. Subsequent reverses changed his mind as to his capacity to pay, and brought about his general assignment.

The only grounds upon which it can be insisted

---

---

that the beneficiaries have been guilty of bad faith, is their silence upon the fact that the deed had been made for their benefit and a failure to register. By our law no time is fixed within which registration must be made, and deeds are good as between the parties without registration, but not as to existing or subsequent creditors, *bona fide* purchasers, without notice, or valid liens acquired by contract or legal proceedings.

In *Chester* v. *Greer*, 5 Hum., 34, it is decided that creditor means a judgment creditor, Judge Turley saying: "On the part of J. M. & J. C. Greenway, who file their bill in behalf of themselves and other creditors of Samuel G. Chester, it is contended that the deed of trust is void as to them for want of registration in proper time, these debts having been contracted before the registration of the deed."

"To this it is answered that though by the provisions of the 12th section of the act of 1831, ch. 90, all deeds and other instruments mentioned in the 1st section of the act and not registered as therein provided, are void as to existing or subsequent creditors, yet by this is meant judgment creditors and not creditors *in pais*."

In *Bridewell* v. *Cain*, 1 Cold., 303, Judge Wright says: "A purchase if made or trust taken before the judgment existed, does not by reason of the non-registration of the deed become infected with turpitude; and if it be afterwards registered before other creditors acquired liens upon the property embraced in the deed, as to them it takes effect from its date and they cannot call in question its validity."

Our law authorizing the bringing of suits by cred-
itors without judgment, attacking conveyances as made
to hinder and delay creditors does not change or in
any way affect the rule established by the cases cited,
as the law applies as well to registered as to unreg-
istered deeds

It is next insisted that the conduct of the maker
and beneficiaries, in keeping secret the existence of
the deed enabled the maker to contract debts upon
the faith of his supposed ownership of the property,
and that he did so contract and thereby a fraud was
practiced upon complainants, who say they would not
have extended his credit and would have proceeded
to collect the amounts already due them.

So far as the record goes, it appears that nothing
was said by any of the parties thereto, of the exist-
ence of the deed, none of them made any representa-
tions in any way, but remained silent upon this subject.

In the case of *Chester* v. *Greer*, already cited, Judge
Turley says: " It is contended on the part of the
creditors that the deed of trust is void on the part
of the *cestui que trust*, in this, that it appears that
one of them, Samuel Greer, being interrogated as to
whether he had a mortgage or trust upon the prop-
erty of Chester, denied that he had, and asserted that
he was solvent and that persons might contract debts
with him in safety. It is difficult to justify this
conduct on the part of Greer, but still it does not
affect his rights under the deed of trust, as the case
is presented to our consideration. The complainants,
from their own showing, are not in a condition to

take advantage of this objection, for two reasons: First, they are, as we have already held, creditors *in pais,* having neither judgments against Chester nor liens upon the property conveyed in the deed of trust." After citing authorities to the point, the court proceeds: "These authorities prove that the fact of misrepresentation, although a debt *in pais* may be contracted under it will not vitiate the lien acquired by the mortgage or deed of trust, but that to have that effect a subsequent lien must be acquired upon the same property by the debtor contracting under the mistake, induced by the false information thus communicated to him." "But second: It is necessary to fix the fraud upon the prior encumbrancer that he should be informed of the intention of the person making the inquiry to lend money upon the credit of the encumbered property, for otherwise the fraudulent intention is wanting, and the mere falsehood is not sufficient for such purpose."

Try the present case by these rules. Here no representation has been made, no inquiry by complainants or others. Complainants are merely creditors *in pais.* There has been no denial of the existence of the deed, no assertion of the solvency of Samuel Gill. There were no liens upon the property conveyed in trust, and no contracting under a mistake induced by false representation communicated by defendants.

If the facts that Greer denied having a mortgage and asserted the solvency of Chester, and declared that debts might be contracted with him in safety,

Cowan, McClung & Co. *v.* Gill.

would not defeat his unregistered trust, for stronger reasons an honest and unprovoked silence cannot be taken advantage of here.

The proof and argument that complainants sold goods to W. T. Gill & Co., upon the faith of the property of Samuel Gill, is met by the stronger one that Hoyle, Shields and others gave to Samuel Gill alone credit upon the faith of his property. In such case the law prefers the individual to the partnership creditor. If this were not so, it is a race of diligence between creditors, all having large debts, and all contracted upon the faith of property.

There has been the advantage to respondents that complainants trusted faith alone, while respondents added to their faith works, and secured their debts by the deed in trust.

The fact that the trustee and witnesses to the deed are nearly related to the parties avails nothing under the facts of this case.

The Referees hold the deed void under second section of act of April 6, 1881, ch. 121, which is: "That any mortgage, deed in trust, or other conveyance of a portion of a debtor's property for the benefit of any particular creditor or creditors, made within three months preceding a general assignment, and in contemplation of making a general assignment, shall be void in the event a general assignment is made within three months thereafter, and the property conveyed by such conveyance shall be shared ratably by all creditors just as that embraced in general assignment."

As we have seen, the deed in trust was executed and delivered about fourteen months before the general assignment. · The moment the deed was signed and delivered the maker lost all control over it, his title to the property passed from him irrevocably under · the terms of the deed and for its purposes, and if, as we have seen is the law, an unregistered deed passes title, it must be held to be " made " at the moment of delivery, and registration or non-registration neither makes nor unmakes it. The reasoning in the cases cited as to the efficacy of the deed unregistered applies in force to this question, and is conclusive of it. Such is the holding of Chase, C. J., *In re Wynne,* 4 N. B. R., 23, and in *Hansete* v. *Harrison,* 15 Otto, 406.

The facts show conclusively that the conveyance was not made in contemplation of making a general assignment, this distinctly appears from the conduct of Samuel Gill, already referred to, when he was approached to make the deed in trust. When Samuel Gill made the deed of December, 1880, it was valid, and any subsequent statutes upon the subject of conveyances could not invalidate it. Rights had already vested under it, and must remain, regardless of subsequent legislation.

Another question arises upon a note executed by Samuel Gill as surviving partner after the death of W. T. The note was something over $2,700, and for goods bought of complainant. The goods were carried to the store and placed in stock with the goods of the late firm under the management of Samuel Gill.

It is insisted for complainants that by the act of commingling the two stocks, old and new, they became partnership property, and are first liable to the payment of partnership debts. The chancellor so held, we think, erroneously.

Upon the death of W. T. Gill the partnership was *ipso facto* dissolved. The surviving partner had no right or authority to bind his estate upon new contracts. All the rights conferred upon him as survivor were confined to the winding up and settling the business and estate of the firm, as it was left by the decedent. If he saw fit to buy more goods, and place in store with those on hand, it was on his own account and at his own risk; he became owner as an individual and not as a surviving partner, and upon his insolvency such goods must be first applied to his individual indebtedness: *McGinty* v. *Flannigan*, 16 Otto, 661.

An account will be had to ascertain the relative values of the partnership and individual goods that proper application may be made of the proceeds to debts.

It is next insisted for complainants, that Jas. T. Shields and Jas. S. Gill were indebted in some amounts to W. T. Gill & Co., and that Samuel Gill was indebted to each of them. That after the death of W. T. Gill, and before the general assignment, the parties settled, and the indebtedness of Gill was used in payment of the debts to the partnership, that therefore the trustee under the general assignment must be made to disregard the settlements, and collect of Gill

and Shields the amount of their several indebtedness for the benefit of partnership creditors.  Samuel Gill had the right to control the debts and assets of the firm .in his own way until restrained for misappropriation, and having without fraud used firm assets in payment; of individual debts, all persons are bound thereby, and he alone can be held to account.  If Gill had collected the money due the firm, and afterwards with the same money discharged a debt due from himself to the same parties, the payment would be good.  The same rule applies to an exchange of evidences ,of debt.

It is ,claimed that Samuel Gill used of the funds of his firm about $17,000 in his individual business, and that this should be accounted for as assets of the firm in the payment of its debts.

If the facts are as charged, it also appears that any amount taken out was with the consent of the partner, and charged by him on the books of the firm.  It is well settled law that if one partner draw out of the assets of the firm for his own use, with the consent of the other members of the firm, without fraud and without intent to injure creditors. that such funds become at once the individual means of the taker, and are no longer part of the firm estate. In Story on Partnership, Ed. 81, sec. 391, it is said: "It is now the settled rule that when one partner has become indebted to the firm, or has taken more than his just share of the joint funds, the joint creditors are not to be admitted to prove against the separate estate of that partner until his separate cred-

Cowan, McClung & Co. v. Gill.

itors are satisfied, unless it can be shown that in drawing out the money the partner has acted fraudulently with a view to benefit his separate creditors at the expense of his joint creditors." " And it is now an indisputable rule in bankruptcy that where the debt from one partner to the partnership was incurred with the privity of his co-partner, proof by the joint against the separate estate will not be admitted."

The rents in the hands of the receiver derived from the land "conveyed, under the facts of this case, are incident to the trust, and will be first appropriated thereto. The proceeds of the sale of the land, together with rents, will be applied first to the costs and expenses of administering the trust, including reasonable compensation to the trustee for his own services and attorney's fees, then to the payment of the debts secured, and the remainder will be paid to the trustee under the general assignment.

It is argued for respondents that as complainants have attacked the general assignment to the extent of its recognition of the first deed, therefore they have forfeited all right to take under it. We do not think so. We have lately holden that a beneficiary in a deed of trust may attack other debts secured by it for fraud, and although he fail, still he is entitled to the benefits of the deed.

Respondents' exceptions to the report of Referees are allowed, the decree of the chancellor will be modified as indicated in this opinion, and in all.

·other respects affirmed with costs. The cause is remanded for execution of the general assignment.

Upon petition to rehear, TURNEY, J., said:

This cause was disposed of at a former day of the term, and is before us a second time on petition "to modify opinion and decrée as to rents." The error assigned is based upon an expression that "the rents are incident to the trust," etc.

This expression was used solely with reference to the peculiar facts, and not, as argued, to overthrow the rules:

1. That "A trustee holding the legal title to land under a deed of trust to secure creditors, *but not in possession,* is not entitled to the rents, nor can the same be attached by the beneficiary for the payment ·of his debt."

2. That "Rents accruing after execution of the mortgage, and before sale, in absence of contract as to same, belong to mortgagor."

3. "That in Tennessee the mortgage is always treated as a mere security for the debt, and when the mortgagee is out of possession, it is the *corpus* of the property, not *its rents and profits,* which constitute the fund for the satisfaction of the debt."

4. That "A mortgagee has no specific lien upon the rents and profits of the mortgage land unless he has in the mortgage stipulated for a specifie pledge of them as part of his security."

5. Nor "The general rule that the mortgagee, as against the mortgagor in possession, or those deriving

title under him subsequent to mortgage, is not entitled to a receiver of rents *pendente lite.*"

As we have said, it was not purposed to contravene these general rules, but we did treat them as general rules which are not inflexible, and as such may not and do not apply to all cases independent of their peculiar facts.

The rents did not pass under either the deed in trust to W. S. Shields, nor under the general assignment, therefore the beneficiaries under neither have any lien upon them. They were not impounded by complainants, nor was a lien fixed by their bill.

The facts upon which the opinion and decree rest are as follows: That part of the bill on which complainants rely for the position that they impounded the rents or fixed a lien, is in the prayer, "That a receiver he appointed, *or that* W. D. Gammon be compelled to take possession of said lands and collect the rents and profits thereof, and that when the same are collected, they be also distributed ratably among the creditors of said Samuel Gill. That said W. D. Gammon be requested to at once comply with the law by taking the oath, and giving bond as such trustee, or that he be removed and a new trustee appointed in his place, and they further pray that unless the said W. D. Gammon at once comply with the law in this respect that a receiver be appointed to take charge of, manage and control the assets covered by said assignment until a new trustee be appointed."

Gammon was the trustee under the general assignment. He gave bond and took the oath.

44—VOL. 11.

To this bill answers were filed. The answer of Samuel Gill, as appears per the rule docket, as well as from the official endorsement on the original, which is exhibited with the answer to the petition, and by the certificate of the clerk and master, was filed July 15, 1882, instead of 25th, as stated in the petition.

In that answer Samuel Gill says: "In answer to so much of the bill as seeks to take the lands conveyed to W. S. Shields out of the possession of this respondent, and place them in the hands of a receiver, this respondent says, when said deed in trust was made, it was considered that the land, should the respondent fail to pay the debts as provided, would sell for an amount sufficient to pay all the debts secured over the expenses of the trust, when the property was offered for sale by the trustee, having been first most extensively advertised, but few persons attended, only one of whom came with the intention of bidding. This was, as is highly probable in the main, the result of the cloud cast upon the title by the bill of complainants.

The trustee, under the circumstances, declined to offer the property for sale. This has involved so much delay, whereby interest has hereby accrued, and so much expense, with the possibility of further indefinite delay, and so effected the title, this respondent now verily believes that said land is not an adequate security for the payment of the said debts, accrued and accruing interest, expenses and costs accrued and accruing. When it became manifest that these delays would impede the execution of the trust, and that their

additions to the charges upon the property would be made, this respondent agreed with the beneficiaries under the deed to W. S. Shields, that saving his right to a support under the exemption laws, he would not resist an application for the appointment of a receiver on their part, and he now so agrees, submitting to the court the question of his rights," etc.

"And being advised that under said instruments and the facts of the case, that complainants, on their application, are not entitled to have a receiver appointed, he resists the same."

A notice was given by Cowan, McClung & Co., that they would, at chambers, apply for the appointment of a receiver on June 17. This was abandoned upon the agreement that J. T. Shields would see "that the wheat crop shall not be disturbed or disposed of until the application hereafter agreed upon to be made shall be disposed of. It is agreed that said application may be continued until the second day of the chancery court at Morristown, to be held beginning on the third Monday of July next, and then to be tried and disposed of by the chancellor, or person holding said chancery court, or a motion for a receiver may be then made by any party or parties entitled in said cause, if they so desire or elect without further notice to any person, and then to be disposed of and decided," etc.

The parties went before the chancellor at Morristown and the following order was made: "Came complainants, Cowan, McClung & Co., and moved for the appointment of a receiver to take charge of the rents,

etc., on the lands mentioned in the pleadings, to hold, collect and receive and sell same, and then came J. T. Shields, J. B. Hoyle and Jas. S. Gill, and also moved for a receiver to take charge of, receive and sell rents of lands mentioned in the pleadings, and all parties having had notice of these applications, and it being admitted and also being made to appear, that a receiver is proper and necessary, it is, therefore, by consent of parties, ordered and adjudged that W. S. Shields be appointed a receiver to take charge of, collect and receive and sell all the rents on * * now accrued or accruing for present year upon the lands mentioned in the pleadings," etc.

After ordering a sale, the order proceeds: " Said Shields shall hold the proceeds of the said rents subject to the order of the court on final hearing of this cause, and by like consent it is ordered that said proceeds of the said rents, etc., shall abide by and be controlled as to this application and disposition by the final adjudication in this cause, it not being intended to prejudice the rights of any one as to their rights to receive said funds."

This consent order was made on the 18th of July, three days after the answer of Gill had been filed, and we must presume it was before the court and seen and considered by the parties or their solicitors.

As we have seen, the prayer of the bill was in the alternative, the condition was complied with, and so far the application was necessarily at an end. The bill asks for no attachment, injunction or any other process by which to impound the rents or fix a lien

upon them, so that under the several rules relied on the mortgagor was the owner and might dispose of them as he pleased; he had agreed that the beneficiaries under the first deed might have them placed in the hands of a receiver to be applied to their debts.

A receiver of the rents and profits may be appointed *pendente lite* when the mortgage is insufficient and the party personally liable is insolvent: Jones on Mortgages, vol. 2, sec. 1516.

It is a maxim that a man may voluntarily and lawfully do that which a court of equity would compel him to do. In this instance Samuel Gill was insolvent and personally liable for the debt. The land conveyed was insufficient to discharge the debt, the mortgagee might have ejected him by proper proceedings, have impounded the rents and forced the appointment of a receiver. He has done away with the necessity for such proceedings by consenting to part with the rents of the lands conveyed for the benefit of the preferred creditors. His answer under oath made a case for the appointment of a receiver for the benefit of defendants, while no case is made for complainants. It has been adjudged that their bill was wrongfully filed, and no complaint is made in the petition of such adjudication. •

The race of diligence was going on between creditors. The defendants were successful in obtaining, by contract, an advantage which complainants failed to take any legal step to secure, even if they could at all have obtained such advantage as against defendants, and which it is unnecessary to decide.

The application to have a receiver must have been against the mortgagor in possession, before that application was made he had disposed of the property rightfully and without fraud, and there is no pleading attacking that disposition, nor is there anything in the record showing any purpose to defraud complainants in the disposition.

Dismiss the petition.